# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARY TAKKI, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No.<br>) 18-10099-FDS |
| BETH ISRAEL DEACONESS<br>HOSPITAL-PLYMOUTH, INC., | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is an action for wrongful termination of employment. Plaintiff Mary Takki was employed as a pharmacist for 40 years by defendant Beth Israel Deaconess Hospital-Plymouth. On June 21, 2016, Takki cut the hair of a coworker, apparently without her consent. Beth Israel's human resources department investigated the incident, which led to Takki's resignation on July 12, 2016.

Takki then brought suit against Beth Israel in state court, alleging state-law claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Beth Israel removed the case to federal court on the ground that the claims were preempted by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). The Court then granted her motion to amend the complaint to assert a single count of breach of contract under the LMRA.

Beth Israel has moved for summary judgment, contending that Takki failed to exhaust the grievance procedure in the collective bargaining agreement, a prerequisite for bringing suit under the LMRA. For the following reasons, the motion will be granted.

I.     **Background**

   A.     **Factual Background**

The following facts are as set forth in the record and are undisputed.  The Court will draw heavily from factual findings made by the Massachusetts Department of Unemployment Assistance, attached as plaintiff's Exhibit A.

Mary Takki worked as a pharmacist for Beth Israel from June 26, 1976, to July 12, 2016. (Compl. ¶ 1).  At all relevant times, she was represented by the 1199 SEIU United Healthcare Workers East union, and the terms and conditions of her employment were governed by a collective bargaining agreement ("CBA").  (Melvin Aff. ¶¶ 3-4).

On June 21, 2016, one of Takki's coworkers arrived to work with "windblown" hair.  (Pl. Ex. A ¶ 5).  Takki told her coworker, whom she had worked with for approximately 30 years, "I can fix your hair for you."  (*Id.* ¶¶ 5-6).  The coworker responded, "sure, go ahead."  (*Id.* ¶ 6). Takki then cut the coworker's hair with a pair of scissors.  (*Id.*).

The two worked together without incident for the following two days.  (*Id.* ¶¶ 10-11). However, news of the haircut quickly spread.  On June 23, 2016, the Director of Pharmacy and a human resources manager questioned the coworker.  (*Id.* ¶ 13).  The coworker stated that she had not intended that Takki cut her hair, and was surprised when she did so.  (*Id.*).

Takki was on vacation from June 24 to July 11, 2016.  (*Id.* ¶ 14).  After she returned, she met with the Director of Pharmacy, the human resources manager, and a union representative. (*Id.* ¶ 15).  She admitted to cutting the coworker's hair, but stated that she had misunderstood her intentions.  (*Id.*).  The following day, on July 12, 2016, the human resources manager informed Takki that her employment would be terminated for cause because she had violated the hospital's workplace violence [sic] policy.  (*Id.* ¶ 16).  The parties agreed, however, that in lieu of

2

termination, Takki would sign a resignation agreement, agreeing to "waive any rights either [she] or the union may have under the collective bargaining agreement . . . to file a grievance or arbitration in connection with the [haircut incident and separation of employment]." (*Id.* ¶ 17; Def. Ex. E).

B. **Procedural Background**

Takki filed suit against Beth Israel in Plymouth Superior Court on December 19, 2017. The complaint asserted state-law claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Beth Israel timely removed the action to this Court on January 18, 2018, alleging that both claims were preempted by the LMRA.

On March 23, 2018, Takki moved to amend the complaint to assert a claim under the LMRA. The Court granted the motion on May 16, 2018, and directed her to file an amended complaint by June 8, 2018. After the amended complaint was filed, Beth Israel moved for summary judgment.

II. **Legal Standard**

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court

indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotations omitted). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

### III. Analysis

Beth Israel correctly notes that in order to assert a LMRA claim for breach of a CBA, an employee must first exhaust any grievance procedures in the CBA and abide by the CBA's finality provisions. *See Ramirez-Lebron v. Int'l Shipping Agency, Inc.*, 593 F.3d 124, 131 (1st Cir. 2010). The rationale for the exhaustion requirement is that "[t]he collective bargaining system . . . of necessity subordinates the interests of an individual employee to the collective interests of all employees in a bargaining unit." *Id.* (quoting *Vaca v. Sipes*, 386 U.S. 171, 182 (1967)).[1]

The parties do not dispute that under the terms of the resignation agreement, Takki and the union agreed "to waive any rights [they had] under the collective bargaining agreement," including the right to file a grievance or seek arbitration. (Def. Ex. E). Accordingly, the exhaustion requirement was never satisfied.

In her opposition, Takki makes two arguments. First, she contends that her consent to the resignation agreement was "forced" or "involuntary." (Mem. in Opp. at 6). She contends that

---

[1] *DeGrandis v. Children's Hosp. Boston*, 806 F.3d 13 (1st Cir. 2015), is not applicable. In *DeGrandis*, the First Circuit held that a LMRA breach-of-contract claim was not subject to the exhaustion requirement. However, the court's holding was based on the plaintiff's acceptance of a "Memorandum of Agreement" in which he waived the grievance and arbitration procedures in the CBA for all *future* workplace deficiencies. Therefore, when the plaintiff was terminated seven months later, his "only option for obtaining review was to bring a claim in federal court." *Id.* at 18. By contrast, it is undisputed that before Takki signed the resignation agreement, she could have invoked her grievance and arbitration rights.

4

her choices were either to accept Beth Israel's terms or "face the adverse consequences of a termination[,] including loss of benefits and a negative impact on [her] future employment applications." (*Id.* at 8). That is tantamount to a claim of economic duress.

In order "[t]o show economic duress, (1) a party 'must show that [s]he has been the victim of a wrongful or unlawful act or threat, and (2) such act or threat must be one which deprives the victim of [her] unfettered will.'" *Int'l Underwater Contractors, Inc. v. N.E. Tel. & Tel. Co.*, 8 Mass. App. Ct. 340, 342 (1979) (quoting 13 WILLISTON, CONTRACTS § 1617, at 704 (3d ed.1970)). Proof of duress requires more than that a party took advantage of another's negative economic situation; it requires evidence that the accused party caused the financial difficulty to induce the contract or agreement. *Id.* (citing 13 WILLISTON, *supra*, § 1617, at 708.). In Massachusetts, "[r]elease of a party from its contractual obligations on a claim of economic duress is 'reserved for extreme and extraordinary cases.'" *Society of the Holy Transfiguration Monastery, Inc. v. Archbishop Gregory of Denver, Colorado¸* 685 F. Supp. 2d 217, 224 (D. Mass. 2010) (quoting *Cabot Corp. v. AVX Corp.*, 448 Mass. 627, 639 (2007)).

This is not such an "extreme and extraordinary" case. Here, as evidenced by her affidavit, Takki was fully aware that she faced termination if she did not accept the resignation agreement. (Takki Aff. ¶ 10). She also knew that she had grievance and arbitration rights under Article XII of the CBA. (*Id.* ¶ 8; Def. Ex. F).

The choice provided to Takki—between (1) invoking the grievance and arbitration process or (2) accepting the separation agreement, which offered certain financial benefits (including medical insurance, accumulated earned time and holiday banks, and 25% of her "LTI bank")—was neither unduly wrongful nor oppressive. That is the type of "hard bargaining" that is "not only acceptable, but indeed, desirable, in our economic system, and should not be

5

discouraged by the courts." *Pizzeria Uno Corp. v. Pizza by Pubs, Inc.*, 2011 WL 4020845, at *5 (D. Mass. Sep. 9, 2011) (quoting *Cabot Corp.*, 448 Mass. at 639).

Takki also argues that she was coerced into signing the resignation agreement because she "was of the clear opinion that any resort to the grievance procedure would be absolutely futile" and that her union representative "essentially adopted the position of Beth Israel regarding the futility of a grievance procedure." (Takki Aff. ¶¶ 20-21).

This appears to be an argument that the grievance process would have been an exercise in futility. However, Takki provides no authority, and the Court is unaware of any, that would allow a litigant to avoid the exhaustion requirement just because she believed she was likely to lose. Indeed, the sole case she cites, *Zeyer v. Bd. of Educ.*, 98 F. Supp. 3d 425 (D. Conn. 2015), makes that clear. Although there is a "futility" exception, it applies only where "a formal effort to pursue contractual or administrative remedies would be absolutely futile." *Id.* at 443 (quoting *Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 331 (1969)). "The exception requires 'a showing of exceptional conditions.'" *Id.* (quoting *Bovers v. Flying Tiger Line Inc.*, 979 F.2d 291, 299 (2d Cir. 1992)). It is "largely limited to situations where the operation of bias or prejudice renders any attempts to resort to contractual remedies useless." *Id.* (quoting *Vera v. Saks & Co.*, 424 F. Supp. 2d 694, 707 (S.D.N.Y. 2006). But, Takki has not even alleged, let alone provided evidence, that Beth Israel, the union, or any other party in the grievance process would be so biased or prejudiced to render it futile.

In short, Takki was not improperly coerced into signing the resignation agreement. Accordingly, she validly waived the grievance process that was a prerequisite for bringing her LMRA claim.

## IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: August 15, 2018                United States District Judge